[No. 67632-6-I.    Division One.    July 2, 2012.]

*In the Matter of the Personal Restraint of* GEORGE ANTHONY WILSON, *Petitioner.*

382

*Lila J. Silverstein* (of *Washington Appellate Project*), for petitioner.

*Mark E. Lindquist, Prosecuting Attorney*, and *Stephen D. Trinen, Deputy*, for respondent.

¶1 BECKER, J. — In this personal restraint petition, George Anthony Wilson challenges his first degree murder conviction. The conviction was based on an accomplice theory of felony murder. Within the one-year time bar, Wilson collaterally attacked his conviction by filing a motion for relief from judgment in the trial court in 2001. The trial court ordered the motion transferred to this court, but the transfer did not occur and the motion remained in limbo for more than 10 years. We reject the State's argument that Wilson abandoned his motion by failing to ask what happened to it; Wilson complied with the rules. Addressing Wilson's collateral attack on the merits, we conclude trial counsel was ineffective for proposing an accomplice liability instruction with "a crime" terminology instead of "the crime." We grant relief and order a new trial.

## FACTS[1]

¶2 Wilson, then 17 years old, went to a party at the home of Cecil Davis on January 24, 1997. The party lasted into the early morning hours. Keith Burks testified that he, Wilson, and Davis were smoking on the porch when Davis looked across the street at the home of Yoshiko Couch and said something about needing to rob somebody. Burks testified that he and Wilson thought Davis was just "talking crazy" because he was drunk. Davis started walking down the street. Wilson and Burks followed him, but they went back to the house when Davis's sister yelled at them. They

---

[1] The underlying facts of Wilson's conviction are described in detail in this court's unpublished opinion affirming Wilson's conviction. *See State v. Wilson,* noted at 101 Wn. App. 1070 (2000), *review denied,* 142 Wn.2d 1020 (2001). Pertinent facts are also recounted in *State v. Davis,* 141 Wn.2d 798, 10 P.3d 977 (2000), and *In re Personal Restraint of Davis,* 152 Wn.2d 647, 101 P.3d 1 (2004).

were standing on the porch again when Davis said, "I need to kill me a motherfucker." Burks went inside, leaving Davis and Wilson on the porch.

¶3 About five minutes later, Wilson appeared at the back door. His eyes were "big and he had a scared look in his face." Burks unlocked the door and let him in. Wilson told Burks that Davis was "going crazy," that he and Davis went over to the Couch house to "rip the lady off, but Cecil just kicked in the door" and "started beating on her and rubbing all over." Wilson told Burks he was still outside in front of the house when Davis kicked in the door and Wilson saw the woman coming down the stairs.

¶4 Late the next morning, friends discovered Couch's body in her upstairs bathtub. Found dead with towels over her face, Couch had been beaten, sexually assaulted, and forced to inhale xylene, a toxic bathroom cleaner. An autopsy revealed Couch died from asphyxiation and xylene toxicity.

¶5 The investigation of Couch's death produced evidence indicating that Davis was the perpetrator of the homicide and had taken property from the Couch residence. None of the physical evidence recovered at the scene was linked to Wilson. Davis and Wilson were arrested and charged with first degree murder.[2] The charge against Davis was later amended to aggravated first degree murder. Wilson's charge was predicated on an accomplice theory of felony murder.

---

[2] The information read in part:

That CECIL EMILE DAVIS and GEORGE ANTHONY WILSON, in Pierce County, Washington, on or about the 25th day of January, 1997, did unlawfully and feloniously, acting as accomplices of each other, as defined in RCW 9A.08.020, while committing or attempting to commit the crime of Robbery in the first or second degree and/or Rape in the first or second degree, and/or burglary in the first degree, did enter the home of Yoshiko Couch, and in the course of and furtherance of said crime or in immediate flight therefrom, Yoshiko Couch, a human being, not a participant in such crime, was choked and/or suffocated, thereby causing the death of Yoshiko Couch, on or about the 25th day of January, 1997, contrary to RCW 9A.32.030(1)(c), and against the peace and dignity of the State of Washington.

¶6 Wilson and Davis were tried together in early 1998. The jury convicted both as charged. Davis was sentenced to death. On March 30, 1998, Wilson was given a sentence of 304 months.

¶7 Wilson appealed, raising issues of confrontation, ineffective assistance, speedy trial, and sufficiency of the evidence. This court affirmed Wilson's conviction on August 4, 2000. Our Supreme Court denied review on January 9, 2001. The mandate terminating direct review was filed on January 18, 2001.

¶8 Wilson filed a motion for relief from judgment in superior court in December 2001 under CrR 7.8. He argued the accomplice liability instruction used at trial was improper under *State v. Cronin*, 142 Wn.2d 568, 14 P.3d 752 (2000), and *State v. Roberts*, 142 Wn.2d 471, 14 P.3d 713 (2000). On February 4, 2002, the superior court filed an order converting the motion to a personal restraint petition pursuant to former CrR 7.8(c)(2) (1991) and ordering the case transferred to the Court of Appeals. An administrative error occurred, and the transfer was not accomplished. As a result, this court did not rule on the petition.

¶9 Between 2001 and 2009, Wilson filed other postconviction motions. In 2009, he filed a motion to reinstate his original personal restraint petition. This court dismissed the petition. The Supreme Court granted discretionary review on February 9, 2010, and remanded to this court to determine whether Wilson abandoned his original petition and to address the merits of the petition if he did not abandon it. *In re Pers. Restraint of Wilson*, 168 Wn.2d 1001, 227 P.3d 1277 (2010). We appointed counsel and have received supplemental briefing.

## ABANDONMENT

¶10 In general, a collateral attack on a judgment and sentence must be filed no later than one year after the judgment becomes final. RCW 10.73.090(1). Wilson's origi-

nal petition, filed in December 2001 as a motion for relief from judgment, was timely under this statute. The State concedes the petition was timely when filed but argues Wilson abandoned the petition by failing to act when years passed with no action by the courts.

¶11 Wilson did not seek additional relief until 2006, when he made an unrelated motion to reduce or modify his sentence. The State filed a response on March 28, 2006. In reviewing the history of the case, the State's response noted the existence of the transfer order of February 4, 2002, and remarked that the appellate court never ordered the State to respond to that petition. The State now asserts that its response gave Wilson actual notice that the court was not acting on his original petition, and he must be deemed to have abandoned the petition because he allowed it to languish for three more years thereafter.

¶12 There is evidence that Wilson did take some action to have his petition acted upon. In a declaration, Wilson states he followed up in 2003 and 2007 and he was either told the court would handle it or received no response. The declaration is irrelevant, as Wilson did not have an obligation to inquire. Wilson timely filed a motion for relief from judgment. The State fails to show that further action on Wilson's part was necessary to preserve his right to be heard. The order directing the transfer of the motion to this court, to be heard as a personal restraint petition, did not impose any obligation on Wilson to make sure the transfer took place. Wilson complied with the rules. He is not responsible for the administrative error. We conclude he did not abandon his 2001 petition, and we now address it on the merits.

## ACCOMPLICE LIABILITY AND INEFFECTIVE ASSISTANCE

■ ¶13 To obtain relief on collateral review based on a constitutional error, the petitioner must demonstrate by a

preponderance of the evidence that he was actually and substantially prejudiced by the error. *In re Pers. Restraint of Hubert*, 138 Wn. App. 924, 928, 158 P.3d 1282 (2007).

¶14 Wilson's original petition alleged instructional error as the basis for granting him a new trial. The definition of "accomplice liability" departed from the statutory definition by using the phrase "a crime" where it should have said "the crime." Defense counsel and the State both proposed the identical definition, based on a pattern instruction. More than two years after Wilson's trial, the Supreme Court declared in *Cronin* and *Roberts* that such an instruction is erroneous.³

■ ■ ¶15 Wilson's supplemental brief, written by an attorney, addresses the issue under the heading, "The Accomplice Liability Instruction Impermissibly Lowered the State's Burden of Proof," but it then reframes the issue as whether defense counsel was ineffective by proposing the defective instruction. The State suggests ineffective assistance is a new claim, distinct from the instructional issue raised in Wilson's timely original petition, and is therefore time barred because it does not fall under any of the exceptions to the one-year time limit. *See* RCW 10.73.100; *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 349, 5 P.3d 1240 (2000).

¶16 Wilson responds that the issue of ineffective assistance is "part and parcel" of the *Cronin* and *Roberts* issue, not a freestanding claim. We agree. Where defense counsel proposes an erroneous instruction, review will often be precluded because the error is invited. But if the instructional error is the result of ineffective assistance of counsel, "the invited error doctrine does not preclude review." *State v. Kyllo*, 166 Wn.2d 856, 861, 215 P.3d 177 (2009). Seeing

³ Wilson's original petition asserted that *Cronin* and *Roberts* represented a significant and material change in the law. Contrary to that assertion, *Cronin* and *Roberts* did not constitute a "significant change in the law" under RCW 10.73.100(6). *In re Pers. Restraint of Domingo*, 155 Wn.2d 356, 119 P.3d 816 (2005). Therefore, that exception to the one-year time limit would not apply if Wilson's petition were untimely.

the accomplice liability instruction through the lens of ineffective assistance does not transform it into a different claim; the claim remains one of instructional error.

A "new" issue is not created merely by supporting a previous ground for relief with different factual allegations or with different legal arguments. For example, "[a] defendant may not recast the same issue as an ineffective assistance claim; simply recasting an argument in that manner does not create a new ground for relief or constitute good cause for reconsidering the previous rejected claim."

*In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004) (footnote omitted) (quoting *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001)); *see also In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 361 n.2, 256 P.3d 277 (2011) (citing RAP 1.2 and liberally construing CrR 7.8 motion to raise a sufficiency of the evidence issue despite fact that the petitioner initially framed the issue as a matter of instructional error).

¶17 The State also argues the claim is barred as successive because Wilson raised an ineffective assistance counsel claim on direct appeal. A collateral attack may not renew an issue raised and rejected on direct appeal unless the interests of justice require relitigation of that issue. *Davis*, 152 Wn.2d at 671. The claim of ineffective assistance rejected on Wilson's direct appeal concerned defense counsel's agreement to inform the jury that Wilson would not be subject to the death penalty. The accomplice liability instruction presents a distinct legal basis for granting relief not adjudicated in the direct appeal. *See In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 688, 717 P.2d 755 (1986). Wilson raises "new points of fact and law" that were not raised in the principal action. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388-89, 972 P.2d 1250 (1999).

¶18 Having concluded that Wilson's claim of ineffective assistance relating to the instructional error is neither time barred nor successive, we address it on the merits.

¶19 To convict Wilson of first degree felony murder, the jury had to find that Wilson or an accomplice was commit-

ting or attempting to commit first or second degree robbery, first or second degree rape, or first degree burglary:

> To convict defendant George Wilson of the charged crime of Felony Murder in the First Degree, each of the following elements of the crime must be proved beyond a reasonable doubt;
>
> (1) That on or about the 25th day of January, 1997, Yoshiko Couch was killed;
>
> (2) That defendant George Wilson or *an accomplice* was committing or attempting to commit Robbery in the First or Second Degree, Rape in the First or Second Degree, or Burglary in the First Degree;
>
> (3) That defendant George Wilson or *an accomplice* caused the death of Yoshiko Couch in the course of and in furtherance of such crime or in immediate flight from such crime;
>
> (4) That Yoshiko Couch was not a participant in the crime; and
>
> (5) That the acts occurred in the State of Washington.
>
> . . . .
>
> The crimes listed in Element Number (2) are alternatives. You must unanimously agree that defendant George Wilson or *an accomplice* was committing or attempting to commit one of those crimes, but you need not be unanimous as to any particular one of those crimes.

Instruction 21 (emphasis added).

■ ¶20 The instruction on the meaning of "accomplice" that defense counsel proposed, and that was given to the jury, contained the same defect as the one given in *Cronin* and *Roberts*:

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of *a crime*, he either:
>
> (1) solicits, commands, encourages, or requests another person to commit the crime; or

(2) aids or agrees to aid another person in planning or committing *a crime*.

Instruction 15 (emphasis added).

¶21 The references to "a crime" instead of "the crime" were wrong. *Roberts*, 142 Wn.2d at 513; *Cronin*, 142 Wn.2d at 579. The culpability of an accomplice as defined in the statute does not extend beyond the crimes of which the accomplice has knowledge. *Roberts*, 142 Wn.2d at 511. The fact that a purported accomplice knows that the principal intends to commit "a crime" does not necessarily mean that accomplice liability attaches "for any and all offenses ultimately committed by the principal." *Cronin*, 142 Wn.2d at 579. To be an accomplice, a person must have knowledge that he or she was promoting or facilitating the crime charged. *Cronin*, 142 Wn.2d at 579. The erroneous instruction unconstitutionally relieved the State of the burden of proving Wilson's knowing participation in "the" crime, meaning the charged crime. *Cronin*, 142 Wn.2d at 580-82.

¶22 To prevail on the claim of ineffective assistance of counsel, Wilson must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Deficient performance is performance falling below an objective standard of reasonableness. *Kyllo*, 166 Wn.2d at 862. When counsel's conduct can be characterized as legitimate strategy, performance is not deficient. *Kyllo*, 166 Wn.2d at 863. Reasonable conduct for an attorney includes carrying out the duty to research the relevant law. *Kyllo*, 166 Wn.2d at 861.

¶23 Proposing a pattern instruction does not ensure performance was reasonable. *Kyllo*, 166 Wn.2d at 865-69 (holding a lawyer's performance was deficient because there were several cases that should have indicated to counsel that the pattern instruction was flawed).

¶24 The instruction used in this case was inconsistent with the statutory definition in RCW 9A.08.020.[4] The statute had not been amended in almost 30 years, and therefore the argument that the pattern instruction was wrong was always available. *In re Pers. Restraint of Domingo*, 155 Wn.2d 356, 367, 119 P.3d 816 (2005). Wilson's trial attorney should have seen the inconsistency between the pattern instruction and the statute and should have recognized that the pattern instruction wrongly allowed an accomplice to be held strictly liable for any and all crimes the principal committed. *See Domingo*, 155 Wn.2d at 368. There is no legitimate strategic reason for allowing an instruction that incorrectly states the law and lowers the State's burden of proof. *Kyllo*, 166 Wn.2d at 869. Therefore, we conclude Wilson's counsel was deficient.

¶25 To meet the second element of the test for ineffective assistance, Wilson must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

¶26 The faulty instruction made it easier for the jury to convict Wilson of felony murder, that is, of causing the death of Couch while committing or attempting to commit robbery, rape, or first degree burglary. The instruction allowed the jury to find that Wilson was an accomplice if he aided or agreed to aid Davis in planning or committing "a" crime. In

---

4

A person is an accomplice of another person in the commission of a crime if:
    (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
        (i) Solicits, commands, encourages, or requests such other person to commit it; or
        (ii) Aids or agrees to aid such other person in planning or committing it; or
    (b) His or her conduct is expressly declared by law to establish his or her complicity.

RCW 9A.08.020(3).

other words, the instruction allowed the jury to conclude Wilson was guilty even if he was not a principal or an accomplice to the charged predicate felonies.

¶27 The record indicates this was a real possibility. There was no forensic evidence linking Wilson to the crime scene or the items taken. The primary evidence of Wilson's participation came from the testimony of Keith Burks. According to Burks, Wilson heard Davis announce that he needed to rob somebody, but they both thought this was just crazy talk by a drunk. At some point, Wilson made a remark to Burks about needing money. Burks reported that Wilson went across the street with Davis and came back five minutes later, looking scared and confused. He told Burks he and Davis were going "to rip the lady off," but when Wilson saw Davis kick in the door and attack the woman, he left. The only other witness who testified about Wilson's participation was Davis's nephew, who claimed Wilson made conflicting statements to him, first saying he went in the house with Davis and later saying he was never inside the house.

¶28 During closing argument, the prosecutor argued Wilson and Davis were accomplices to robbery and burglary (the prosecutor disavowed the theory Wilson was an accomplice to rape). The prosecutor, however, misstated the law by saying Wilson was guilty of the crimes because he had in mind "a crime," even if it was not the same crime Davis had in mind. The prosecutor argued that once Wilson made a deliberate decision to go with Davis in the hope of getting some money, he was responsible for the burglary and robbery that followed. The prosecutor used the now-discredited argument of "in for a penny, in for a pound." *Cronin*, 142 Wn.2d at 577. This line of argument, supported by the erroneous instruction, was prejudicial given the meager evidence concerning Wilson's participation and state of mind. For one thing, it foreclosed Wilson from arguing that in going to the Couch residence with Davis to "rip the old lady off," all he knew was that they were going to steal

something. *See State v. Evans*, 154 Wn.2d 438, 455-56, 114 P.3d 627, *cert. denied*, 546 U.S. 983 (2005). The jury was aware of theft as "a crime" through the definition of theft set forth in the instruction defining robbery, instruction 17. The jury was also aware of second degree burglary through the definition in instruction 19. Neither of these two crimes could support first degree felony murder. RCW 9A.32-.030(1)(c). Burks' testimony that Wilson said he turned back when Davis broke down the door could create reasonable doubt about Wilson's knowledge. The evidence was sufficient for the jury to find that Wilson was an accomplice, but sufficiency is not the test here. Because the jurors were informed that Wilson was responsible for all crimes that followed if he went to the Couch residence with knowledge he was promoting "a crime," they had no reason to assure themselves that he knew he was promoting one of the specified predicate felonies. As a result, our confidence in the outcome is undermined.

¶29 On this record, there is a reasonable probability that but for counsel's failure to object to the defective instruction, the result of the proceeding would have been different.

## WILSON'S ADDITIONAL CLAIMS

¶30 In addition to the issues raised in his petition, Wilson's supplemental brief raises two more claims. One is a claim of prosecutorial misconduct. The other is a claim of insufficient evidence to prove he committed all of the charged alternative means of felony murder, specifically to prove the predicate felony of rape.

¶31 The supplemental brief serves as an amended petition when it adds a claim not raised in the original petition. *In re Pers. Restraint of Davis*, 151 Wn. App. 331, 335 n.6, 211 P.3d 1055 (2009), *review denied*, 168 Wn.2d 1043 (2010). As Wilson correctly concedes, the two additional claims in the amended petition are raised past the one-year statutory time limit. *In re Pers. Restraint of*

*Benn*, 134 Wn.2d 868, 884 & n.3, 952 P.2d 116 (1998). Wilson contends that he may raise these two issues because they meet exceptions to the time bar described in RCW 10.73.100. Under that statutory provision, the one-year time bar does not apply to a collateral attack that is based "solely" on one or more of six grounds. RCW 10.73.100.

¶32 One of the six grounds permits review where there has been a significant and material change in the law. RCW 10.73.100(6). Wilson argues his claim of prosecutorial misconduct meets this exception.

¶33 The prosecutor argued that to find reasonable doubt, a juror must be able to articulate a reason to doubt the State's evidence. This is known as a "fill in the blank" argument. "Is the evidence that you've been presented enough to convince you beyond a reasonable doubt, or can you say I doubt that Cecil Davis killed Mrs. Couch because . . . and then fill in the blank. I doubt that Anthony Wilson is an accomplice to this case because . . . and then fill in the blank. That's the standard of proof that you apply here based on the instructions that the Court has given you."

¶34 A "fill in the blank argument" is improper because it shifts the burden of proof. The first Washington appellate case so holding was *State v. Anderson*, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010). Our Supreme Court recently held the same. *State v. Emery*, 174 Wn.2d 741, 759-60, 278 P.3d 653 (2012).

¶35 An appellate decision does not represent a significant change in the law if the defendant could have argued the issue before publication of the decision. *In re Pers. Restraint of Stoudmire*, 145 Wn.2d 258, 264, 36 P.3d 1005 (2001). No appellate decision precluded Wilson from arguing that the "fill in the blank" argument was improper. Burden-shifting arguments, because they subvert the presumption of innocence and turn the proof beyond a reasonable doubt standard on its head, have always been inappropriate. *See, e.g., State v. Fleming*, 83 Wn. App. 209, 214-15,

921 P.2d 1076 (1996) (prosecutorial misconduct where prosecutor's closing argument misrepresented the burden of proof), *review denied*, 131 Wn.2d 1018 (1997). Because the recent cases do not amount to a significant and material change in the law, RCW 10.73.100(6) is not met and the prosecutorial misconduct claim is time barred.

¶36 Wilson argues that his claim of sufficiency of the evidence satisfies the exception in RCW 10.73.100(4) that applies where the defendant pleaded not guilty "and the evidence introduced at trial was insufficient to support the conviction." This claim must be dismissed on a procedural ground, the "mixed petition" rule.

¶37 In a personal restraint petition filed after the one-year time bar, where one or more of the grounds asserted for relief falls within the exceptions in RCW 10.73.100 and one or more does not, the petition is "mixed" and the issues sought to be raised under an exception listed in RCW 10.73.100 must be dismissed. *See In re Pers. Restraint of Turay*, 150 Wn.2d 71, 85-86, 74 P.3d 1194 (2003); *In re Pers. Restraint of Hankerson*, 149 Wn.2d 695, 697, 702-03, 72 P.3d 703 (2003); *Stoudmire*, 141 Wn.2d at 349.

¶38 Even though a claim for insufficiency of the evidence is listed in RCW 10.73.100 as an exception to the one-year time limit, Wilson's claim cannot be heard because it was "mixed" or included in an untimely amended petition with a claim of prosecutorial misconduct that does not fit any exception to the one-year time limit. Accordingly, it must be dismissed under the mixed petition rule.

¶39 In summary, Wilson has met his burden of showing that he was actually and substantially prejudiced by the erroneous accomplice liability instruction that defense counsel proposed. On this ground, his petition is granted, and a new trial is ordered.

Cox and Appelwick, JJ., concur.

Review denied at 176 Wn.2d 1023 (2013).