FILED
COURT OF APPEALS
DIVISION II

2014 MAY -6 AM 8: 30

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44085-7-II |
| Respondent, | |
| v. | |
| WILLIAM KEITH HARSH, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — William Harsh appeals his six convictions of residential burglary as well as his single conviction of theft of a firearm, arguing that there was insufficient evidence to prove that he committed the specific burglaries charged or that he was an accomplice to the firearm theft. Because the evidence was sufficient to show that Harsh committed the six burglaries to which he confessed and that he knowingly aided in the firearm theft, we affirm his convictions.

## FACTS

Following a series of burglaries in Clallam County in the spring of 2008, the investigation focused on Harsh and Joseph Demmon as possible suspects. Harsh agreed to be interviewed from prison in March 2009. During that interview, he explained that he wanted to turn his life around and confessed to helping Demmon with several burglaries in the Sequim area to support his former drug habit. He supplied details about the burglaries but denied knowing that any firearms had been taken. He admitted, however, that Demmon might have taken some firearms.

The State originally charged Harsh with 18 offenses but ultimately reduced the charges to 7 counts of residential burglary and a single count of theft of a firearm, with all counts occurring within the same general area. Following a suppression hearing, the trial court ruled that Harsh's interview statements were admissible. During Detective Sergeant Lyman Moores's testimony, the State played his interview for the jury.

Harsh explained in the interview that he and Demmon usually used his black Honda Civic during the burglaries. Harsh then described entering a single-story home at the corner of a Y intersection. The home had a Ford Explorer parked in the driveway. Harsh said that Demmon pried open the back door and that they took a television set. William Davis testified that his Sequim home on Olson Road was burglarized in May 2008. A photograph taken at that time showed that his home was a single-story residence at the corner of a Y intersection with a Ford Explorer in the carport. Davis testified that the back door of his home was forced open and that a television was taken.

Harsh also confessed to entering a brown two-story home that was right up the street. This home had a balcony in back overlooking the valley and a big shop in front. He and Demmon gained entry through the back door after Demmon pried it open with a crowbar from Harsh's car. Harsh did not remember anything of value being taken from that home. James Bishop testified that his home on Lost Mountain Road, which is on property that neighbors the Davis property, was burglarized in May 2008. A photograph showed that his brown two-story residence has a large shop in front, and Detective Sergeant Moores testified that it has a balcony overlooking the view from the back. Bishop testified that his back door was forced open and that some pain pills and a pistol were taken. A few days later, a deputy recovered a pillowcase containing a pill bottle in Bishop's name farther up Lost Mountain Road.

During his interview, Harsh also remembered a burglary at a home on Blue Mountain Road across from the R Corner Grocery. He and Demmon took a computer and jewelry from that residence. Burl King testified that his home on Blue Mountain Road, which is across the highway from the R Corner Grocery, was burglarized in May 2008. His computer, a gun, and some jewelry were missing, among other items. His neighbor testified that he saw an unfamiliar black car parked in King's yard on the day of the burglary and heard a house door shut.

Harsh also recalled entering a doublewide trailer that had a two-car garage with white doors next to it. He and Demmon forced open the front door and took a desktop computer, a change jar, a camera, and some jewelry from that home. Marilyn McNamara testified that she lives in a doublewide trailer in Sequim that was burglarized in May 2008. The photograph of her home shows that it adjoins a two-car garage with white doors. She added that her desktop computer, a change jar, some jewelry, and a camera docking device were taken, and that there were crowbar marks on the front door.

Harsh also described entering a small house in a cul-de-sac with a hot tub behind a shop. He took items including a television, some jewelry, several DVD's, and a surround sound unit. Megan Waldron testified that her small home is in a cul-de-sac and has a hot tub. In May 2008, her front door was forced open and her surround sound system, television, DVD's, and jewelry were taken.

Harsh further described entering a one-story house with natural wood siding and hardwood floors. He said that Demmon knew the owners because he had done work on their gutters. Harsh took a laptop computer and a few other items from that home. Joseph Sauve testified that his Sequim home on Humble Hill Road was burglarized in May 2008. His house is

3

a single-story residence with natural wood shingles; half of the interior has hardwood flooring. Cole's Gutters had recently done work on Sauve's home. His laptop computer was missing.

After Sheryl Wolover was unable to testify, Deputy Andrew Wagner described investigating the burglary to her home on Lost Mountain Road on May 20, the same night he learned of the nearby Bishop burglary. Wagner also described his contact with Harsh and Demmon in the vicinity of Lost Mountain Road about six hours before he responded to the Wolover burglary. Harsh said that he worked for a construction company and Demmon said that he worked for Cole's Gutters. They told Wagner they were going fishing, but a search of their black Honda Civic did not reveal any fishing gear. Wagner did find a Sony remote and a pry bar.

At the close of the State's evidence, Harsh moved to dismiss the charges. He argued that the evidence was insufficient to show that he committed the specific burglaries charged and that there was no evidence that he stole a firearm or knew that one was stolen during any of the burglaries. The trial court dismissed the count concerning the Wolover burglary but declined to dismiss the remaining charges. With regard to the theft charge, the trial court reasoned that Harsh had acted with the intent to facilitate the theft of any item within a residence and that he knew Demmon had a propensity to steal firearms.

Harsh then testified in his own defense. He admitted participating in a number of burglaries, and when shown photographs of the homes supporting the charges, Harsh thought that it was possible that he had burglarized the Davis, McNamara, Waldron, and Sauve residences. The Bishop and King residences did not look familiar, but he admitted burglarizing homes on Blue Mountain Road, which was where King lived. Harsh testified that he was not aware that any guns had been taken during the burglaries and that Demmon had agreed not to

4

take guns when Harsh was helping him. Harsh also explained that once he and Demmon entered a home, they went through it separately, and he admitted that he never checked afterward to see if Demmon had pocketed anything without his knowledge. Harsh acknowledged that Demmon would look through any guns he found in a house and that he had prevented Demmon from taking firearms on a couple of occasions.

During closing, the State argued that the evidence showed that Harsh was an accomplice to theft of a firearm. The State asserted that Harsh's purpose was to facilitate the crime of theft and that he was responsible for the scope of his partner's theft. The State also maintained that Harsh's knowledge that Demmon might take firearms supported his conviction of the firearm theft as an accomplice.

After the jury found Harsh guilty as charged, the trial court imposed an exceptional sentence of 126 months based on his offender score of 25. On appeal, Harsh challenges the sufficiency of the evidence supporting his convictions.[1]

## ANALYSIS

I.    SUFFICIENCY OF THE EVIDENCE

A.    STANDARD OF REVIEW

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally

---

[1] Because Harsh's pro se statement of additional grounds (SAG) addresses the accomplice liability issue that his appellate attorney raises, we do not discuss the SAG separately.

reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992). We now apply these standards to Harsh's convictions.

### B. THEFT OF A FIREARM

Harsh argues initially that because he did not know Demmon was going to take a firearm during their burglaries, the evidence was insufficient to prove that he was an accomplice to theft of a firearm.

"A person is guilty of theft of a firearm if he or she commits a theft of any firearm." RCW 9A.56.300(1). There was no evidence that Harsh took a firearm during the burglaries; the only issue was whether he was an accomplice to Demmon's firearm theft. The trial court instructed the jury on accomplice liability as follows:

> A person is an accomplice in the commission of a crime if, with knowledge or intent that it will promote or facilitate the commission of the crime, he aids or agrees to aid another person in planning or committing the crime.
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

Clerk's Papers at 46.

As the trial court instructed the jury, a person must have knowledge that he or she was promoting or facilitating the crime charged to be an accomplice to that crime. *In re Pers. Restraint of Wilson*, 169 Wn. App. 379, 390, 279 P.3d 990 (2012) (citing *State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000)). Specific knowledge of each element of the principal's crime need not be proved, however, to convict a person as an accomplice. *State v. Roberts*, 142

6

Wn.2d 471, 513, 14 P.3d 713 (2000); *State v. Rice*, 102 Wn.2d 120, 125, 683 P.2d 199 (1984). General knowledge of the crime is sufficient to support a finding of accomplice liability. *Roberts*, 142 Wn.2d at 513.

Both the trial court and the State reasoned below that the underlying crime was theft and that Harsh was an accomplice to his partner's theft regardless of his knowledge of the specific items taken. Harsh does not dispute that the evidence was sufficient to support a finding of accomplice liability under the general theft statute. *See* RCW 9A.56.020(1)(a) (theft means to "wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services"). The issue is whether evidence sufficient to sustain accomplice liability for theft is also sufficient to sustain accomplice liability for theft of a firearm. Because the definition of theft in the general theft statute applies to the crime of theft of a firearm, theft of a firearm is simply a theft where the property taken is a gun. *See* RCW 9A.56.300(4) (definition of theft under general theft statute applies to crime of theft of a firearm). An accomplice is one whose purpose is to "'promote or facilitate the particular conduct that forms the basis for the charge.'" *Roberts*, 142 Wn.2d at 510 (quoting MODEL PENAL CODE § 2.06, cmt. 6(b) (1985)) (emphasis omitted). Here, the particular conduct that formed the basis for theft of a firearm was theft. RCW 9A.56.020. Harsh clearly knew that his purpose in entering the residences unlawfully with Demmon was to assist him in committing theft, and his general knowledge of that intended crime was sufficient to support his conviction of theft of a firearm as an accomplice.

The evidence also showed that Harsh knew Demmon liked to take firearms and might do so during the burglaries in which Harsh participated despite their agreement to the contrary. Harsh testified that Demmon would look through any firearms found in a residence and that he

7

had prevented Demmon from taking firearms on multiple occasions. During his interview, Harsh did not remember any guns being taken but added that Demmon could have taken some: "Cuz I caught him a couple times doing that too. . . . Like a gun or something, you know, you could just put that in your waistband." Ex. 2, at 128. He admitted that Demmon would have taken guns without telling him. The trial court summarized the evidence concerning Harsh's knowledge of the potential for firearm theft as follows:

> Mr. Harsh was aware that Mr. Demmon had a propensity to steal firearms, even though Mr. Harsh contended in his statement, and I have no reason to disbelieve his contention, that he was categorically against the theft of firearms, uh, the theft of firearms did occur. And he indicated that he had caught Joey Demmon stealing firearms and knew that that was a possibility any time they entered a house, particularly with regard to a handgun which could be readily concealed.

3 Report of Proceedings at 316.

Consequently, in addition to showing that Harsh knew that he was promoting the crime of theft, the evidence showed that he knew such theft might include firearms. When viewed in the light most favorable to the State, the evidence was sufficient to show that Harsh knowingly aided in the theft of a firearm and that he was an accomplice to that crime.

C.    RESIDENTIAL BURGLARY

Harsh also argues that the evidence was insufficient to support his convictions for burglarizing six specific residences. He asserts that the State relied on his confession to committing several burglaries to prove that he committed the specific burglaries charged, rather than actually presenting evidence that he committed the charged burglaries. We disagree. Our statement of facts shows that the State introduced several witnesses who provided details that, when combined with Harsh's interview statements, showed that he burglarized the six specific residences that formed the basis of the burglary charges. When viewed in the light most

favorable to the State, the evidence was sufficient to support Harsh's six residential burglary convictions.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Hunt, J.

_____
Worswick, C.J.