FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JAN 22 AM 10: 10

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 72376-6-I |
| FELIX VINCENT SITTHIVONG, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) ) | FILED: January 22, 2018 |

MANN, J. — Felix Sitthivong petitions for relief from personal restraint resulting from his convictions for murder, attempted murder, and assault, all with firearm enhancements. This court affirmed Sitthivong's conviction on direct appeal and our Supreme Court denied review. Sitthivong then filed this personal restraint petition (PRP), which we dismissed because the issues raised were previously litigated. Our Supreme Court, however, granted Sitthivong's motion for discretionary review and remanded the PRP for us to reconsider in light of its recent decision in State v. Henderson, 182 Wn.2d 734, 344 P.3d 1 (2015). Henderson addressed whether a defendant charged with first degree murder by extreme indifference is entitled to an instruction for the lesser included offense of first degree manslaughter.

In light of Henderson, we agree that Sitthivong was entitled to the lesser included instruction for first degree manslaughter. However, because Sitthivong failed to meet his burden to demonstrate prejudice, we deny his petition.

## FACTS

### Substantive Facts

On a Saturday night in 2010, Sitthivong was in the Belltown neighborhood with a group of friends. They visited several bars during the evening. At one of these bars, Sitthivong testified that he was confronted by a group of men that included Steve Sok and Landon Nguyen, and that during the confrontation someone threatened to kill him.

Around 1:30 a.m., Sitthivong and his friends drove to V-Bar, another bar in the Belltown neighborhood. Sok, Landon Nguyen, Phillip Nguyen, Yousouf Ahmach, and several of their friends were already at V-Bar when Sitthivong and his friends arrived. Sitthivong testified that when they arrived at V-Bar he saw the same group of men who had confronted him at the other bar. After they parked their car, Sitthivong borrowed a gun from one of his friends, tucked it into his pants, got out of the car, and walked toward the bar.

At this point, testimony from the State's witnesses differed from Sitthivong's testimony.[1] Sitthivong testified that Sok, Landon Nguyen, and a third person walked up to him and confronted him. Sitthivong testified that after Sok's group walked away, both Sok and Nguyen turned around and pulled out guns. Sitthivong stated he then grabbed the gun he was carrying and started shooting. Sitthivong testified he focused on shooting towards the gun that was pointed at him, while the second man ducked into

---

[1] Sitthivong admits that the majority of the witness testimony, including the testimony of Sitthivong's companions, was consistent with the State's case. Sitthivong's testimony is mostly uncorroborated.

the doorway. Sitthivong stated he was not aiming, that he was moving as he fired, and that he just pointed and shot as he ran back to the car.

Phillip Nguyen testified that about 30 minutes after arriving at V-Bar, he and Sok went outside to smoke a cigarette. While they were standing outside he heard a series of gunshots and ducked into the entryway of the bar. He turned and saw Sok on the ground where he had been smoking. Nguyen testified he did not see anyone holding a gun, though he saw a muzzle flash.

Landon Nguyen and Ahmach testified that they also left V-Bar to smoke a cigarette. They stated that as they walked away from the bar, Sitthivong approached them, and after a confrontation, grabbed a gun from the waistline of his pants then started shooting. When they saw Sitthivong's gun, they both turned around and ran the opposite direction, back towards the entrance to V-Bar.

Three of Sitthivong's companions, Kenrique Thomas, Ron Battles, and Nam Nguyen, also testified that Sitthivong had a short verbal confrontation with Landon Nguyen and Ahmach. All testified that they had never seen either Landon Nguyen or Ahmach before that confrontation. Sitthivong asked if the Landon Nguyen or Ahmach knew "Sonny," and when they said yes, he drew his gun. Landon Nguyen and Ahmach turned and ran the opposite direction, towards V-Bar. When the gun did not fire, Sitthivong pulled back the slide to load a bullet, and then rapidly fired eight shots down the sidewalk at Landon and Ahmach as they ran. As Sitthivong started shooting, his friends also started running back to the car. Sitthivong eventually ran back to the car. He was the last one to get in the car.

A cell phone video taken from across the street revealed eight rapidly fired gunshots and two men running down the street, seemingly away from the shots. A crime scene investigation determined that the shots all came from the direction where Sitthivong stood, were shot toward the entrance to V-bar, and all of the casings were fired from the same gun.

Sok died of a gunshot wound to the head. Phillip Thomas, a bystander who was not associated with any of the other parties, was shot in the abdomen, but survived.

*Procedural Facts*

By amended information, the State charged Sitthivong with first degree premediated murder (count 1) and, in the alternative, first degree murder by extreme indifference for Sok's death (count 5). The State also charged Sitthivong with first degree assault of Thomas (count 2), and two counts of first degree attempted murder of Ahmach and Landon Nguyen (counts 3 and 4). All charges included firearms enhancements.

Because Sitthivong's primary defense at trial was justifiable homicide, the trial court provided a justification instruction for all five counts. Sitthivong also requested lesser included offense instructions for second degree murder under count 1, and first and second degree manslaughter instructions for all counts. The trial court concluded the evidence supported the lesser instruction for second degree murder and first degree manslaughter for counts 1, 3, and 4. The trial court denied Sitthivong's request to

instruct the jury on the lesser included offense of first degree manslaughter for count 5 (first degree murder with extreme indifference).[2]

After a lengthy trial, a jury convicted Sitthivong of killing Sok under count 5 (first degree murder by extreme indifference) and the lesser included offense of second degree murder under count 1. The jury also convicted Sitthivong of first degree assault (count 2) and two counts of attempted second degree murder (counts 3 and 4). Each conviction included a firearm enhancement. The trial court sentenced Sitthivong to standard range sentences for all counts and vacated the second degree murder conviction under count 1 on double jeopardy grounds.[3]

Sitthivong appealed his convictions to this court. In his direct appeal Sitthivong raised several issues, including that the trial court abused its discretion when it refused to instruct the jury on the lesser included offense of first degree manslaughter. This court affirmed the judgment and sentence in an unpublished decision.[4] Our Supreme Court denied review.

Sitthivong timely filed a PRP alleging substantially the same issues as on his direct appeal. This court dismissed the PRP. Our Supreme Court granted discretionary review and "remanded to the Court of Appeals Division One for reconsideration in light of State v. Henderson, 182 Wn.2d 734, 344 P.3d 1207 (2015)."

---

[2] Sitthivong asked the court to reconsider the next day, providing supplemental briefing for his objection, but the trial court adhered to its ruling.

[3] The jury found Sitthivong guilty of second degree intentional murder of Steve Sok and first degree murder by extreme in difference of Steve Sok. On double jeopardy grounds the court cannot impose a sentence for the same murder on two separate counts; the lesser count was vacated.

[4] See State v. Sitthivong, No. 68030-7-I (Wash. Ct. App. June 17, 2013) (unpublished), http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion&filename=680307MAJ

ANALYSIS

*Personal Restraint Petition*

As a threshold matter, the State urges that we dismiss Sitthivong's PRP because the claim raised was already decided in his direct appeal. We disagree.

The collateral relief available through a PRP is limited. Relief may only be granted if the petitioner is under an unlawful restraint as defined by RAP 16.4. A petitioner generally "is prohibited from renewing an issue that was raised and rejected on direct appeal." In re Pers. Restraint of Davis, 152 Wn.2d 647, 671, 101 P.3d 1 (2004). The court will reconsider an issue previously raised only when "the interests of justice require relitigation of that issue." Davis, 152 Wn.2d at 671. The interests of justice require such reconsideration if there has been "an intervening change in the law" or the petitioner provides "some other justification for having failed to raise a crucial point or argument in the prior application." In re Pers. Restraint of Yates, 177 Wn.2d 1, 17, 296 P.3d 872 (2013) (internal quotation marks omitted). We will decline to consider an issue if the petitioner is merely "supporting a previous ground for relief with different factual allegations or with different legal arguments." Davis, 152 Wn.2d at 671.

Sitthivong's claim that the trial court abused its discretion in denying his request for a lesser included instruction of first degree manslaughter was previously rejected by this court. Subsequent to Sitthivong's direct appeal, however, our Supreme Court decided Henderson which directly addressed when a defendant charged with first degree murder by extreme indifference is entitled to an instruction for the lesser included offense of first degree manslaughter.

In Henderson, as in this case, the defendant was charged with murder by extreme indifference and requested an instruction on the lesser included offense of first degree manslaughter. The trial court denied the motion, applying the broader and more general definition of "recklessness, which is when a person disregards a substantial risk that a wrongful act may occur." Henderson, 182 Wn.2d at 744. The trial court concluded that the evidence did not support an inference that the conduct presented a substantial risk of some wrongful act instead of a "grave risk of death." Henderson, 182 Wn.2d at 744. The court reached this conclusion by relying on State v. Pastrana, 94 Wn. App. 463, 972 P.2d 557 (1999) and State v. Pettus, 89 Wn. App. 688, 951 P.2d 284 (1998), both of which applied the same incorrect definition of manslaughter.

Our Supreme Court reversed, holding the trial court abused its discretion by applying the incorrect legal standard.[5] The court explained that Pettus and Pastrana "are no longer valid" because, as was clarified in State v. Gamble, "the proper definition of recklessness in the context of manslaughter is disregarding a substantial risk that a homicide may occur, not simply the risk of any wrongful act." Henderson, 182 Wn.2d at 744 (citing State v. Gamble, 154 Wn.2d 457, 467, 114 P.3d 646 (2005)). The court further opined that judges must "err on the side of instructing juries on lesser included offenses." Henderson, 182 Wn.2d at 736.

Our Supreme Court then remanded Sitthivong's PRP for our reconsideration in light of Henderson. This is a strong indicator that the Supreme Court believes Henderson represents "a significant change in the law" under RAP 16.4(4). See Davis, 152 Wn.2d at 750. Because both this court and the trial court relied on Pettus and

---

[5] A court abuses its discretion when its decision is based on the incorrect legal standard. Henderson, 182 Wn.2d at 743.

<u>Pastrana</u> in affirming the decision not to allow the lesser included instruction, we will review this issue in the interest of justice.[6]

*Sitthivong Was Entitled to the Lesser Included Instruction*

The right to a lesser included offense instruction is statutory, codified by RCW 10.61.006. A defendant is entitled to an instruction on a lesser included offense when two prongs are satisfied: (1) each of the elements of the lesser offense is a necessary element of the charged offense, and (2) the evidence in the case supports an inference that the lesser crime was committed. <u>State v. Workman</u>, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978); <u>Henderson</u>, 182 Wn.2d at 742.

Washington courts have repeatedly established that the elements of first degree manslaughter are necessary elements of first degree murder by extreme indifference. See <u>Henderson</u>, 182 Wn.2d at 742. Thus, the issue before us is whether the evidence supports an inference that the lesser crime, manslaughter, was committed rather than the greater crime of first degree murder by extreme indifference. When evaluating whether the evidence supports an inference that the lesser crime was committed, we review the evidence "in the light most favorable to the party that requested the instruction." <u>Henderson</u>, 182 Wn.2d at 742.

We review a trial court's decision whether the evidence supports a lesser included offense instruction for an abuse of discretion. <u>State v. Walker</u>, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). A court abuses its discretion when its decision is based on the incorrect legal standard, including application of the incorrect legal standard "based on outdated case law." <u>Henderson</u>, 182 Wn.2d at 743.

---

[6] <u>Sitthivong</u>, No. 68030-7-I, slip op. at 3-4.

A lesser included offense instruction is supported if "the evidence presented in the case supports an inference that only the lesser offense was committed, to the exclusion of the greater, charged offense." State v. Condon, 182 Wn.2d 307, 316, 343 P.3d 357 (2015). Sitthivong was convicted of first degree murder by extreme indifference, which occurs when someone "[u]nder circumstances manifesting an extreme indifference to human life . . . engages in conduct which creates a grave risk of death to any person, and thereby causes the death of a person." RCW 9A.32.030(1)(b) (emphasis added). First degree manslaughter occurs when a person "recklessly causes the death of another person." RCW 9A.32.060(1)(a). "Recklessly" means that "a person knew of and disregarded a substantial risk that a homicide may occur." Henderson, 182 Wn.2d at 743.

Consequently, the question before us is "whether a rational jury could have found that [Sitthivong's] actions constituted a disregard of a substantial risk that a homicide may occur but not an extreme indifference that created a grave risk of death." Henderson, 182 Wn.2d at 744. As our Supreme Court recognized in Henderson, "this is a fairly difficult question because those two definitions are so similar." Henderson, 182 Wn.2d at 744.

Henderson involved a shooting outside of a house party. After visiting a friend in the hospital that had been shot earlier in the evening, Henderson and another friend left the hospital and went to a house party. While standing outside the party, Henderson learned that his friend had died of the gunshot. Shortly thereafter, Henderson pulled a gun and fired six shots toward the front of the house from the street. One of the shots hit and killed one of the people hired as security for the party. Henderson, 182 Wn.2d at

737-39. Henderson, like Sitthivong, was charged with and convicted of first degree murder by extreme indifference. Henderson, 182 Wn.2d at 741.

In concluding that Henderson was entitled to an instruction for the lesser included offense of manslaughter, the Court explained its holding "was based on two unique aspects" of the case. Henderson, 182 Wn.2d at 737. First, the evidence consisted largely of eyewitness testimony that varied widely and was often conflicting. And thus, "viewing the evidence in the light most favorable to the defendant results in a much more significant shift than it would in cases with uncontroverted evidence." And second, "the definitions of the lesser crime (disregarding a substantial risk that a homicide may occur) and the greater crime (creating a grave risk of death) are very close to each other—much closer than is typical." Henderson, 182 Wn.2d at 737. Both of these "unique aspects" also exist in this case.

The Henderson court continued by listing several facts that it believed would support the jury finding manslaughter rather than murder, including "(1) testimony . . . that only three people were outside the house at the time of the shooting, (2) police testimony that no bullets or bullet strikes were found inside the house, . . . (3) the fact that most of the shots . . . did not appear to land near people, and (4) testimony that Henderson shot from the street rather than closer to the house. Henderson, 182 Wn.2d at 745. The court reasoned, viewing the evidence in the light most favorable to the defense, "the jury could have concluded that Henderson intended to scare those in the house by erratically firing his gun rather than aiming at the security people in the yard," accordingly the "jury could rationally find that he committed first degree manslaughter

and not first degree murder by extreme indifference." Henderson, 182 Wn.2d at 745-746.

Sitthivong argues that the facts in this case are so similar to those in Henderson and that, viewing the evidence in the light most favorable to his defense, this court should draw substantially the same inferences and conclusions as in Henderson. We disagree.

For example, Sitthivong testified that there were only three people in his line of fire—similar to the three people standing in front of the house party in Henderson. However, all of the witnesses testified there was a minimum of 10, and up to 30 people in the area. Sitthivong also testified that he paid no attention to whether people were standing and walking in the area into which he opened fire. Sitthivong had driven past the bar immediately before the shooting and stated he saw "a lot of people" standing outside. Even if we assume Sitthivong did not intend to shoot anyone, the number of people within range of Sitthivong's shooting was substantially greater than in Henderson, and the evidence demonstrated that he fired all of his shots towards people. Moreover, Sitthivong's testimony was almost entirely contradicted by the other witnesses and evidence collected at the scene. While we are to view the evidence in the light most favorable to defense, this does not mean we must disregard all evidence that conflicts with Sitthivong's testimony. The court is to consider all of the evidence that is presented at trial when it is deciding whether or not an instruction should be given. State v. Fernandez-Medina, 141 Wn.2d 448, 456, 6 P.3d 1150 (2000).

Considering all of the evidence, it is unlikely that a rational juror viewing the evidence that Sitthivong intentionally shot directly at multiple people standing in front of

a downtown bar, could have found that Sitthivong only disregarded a "substantial risk that a homicide may occur" and find he did not create a "grave risk of death" for many people.

However, there is another important distinction between this case and Henderson. Henderson did not involve a claim of self-defense. Sitthivong argues the reasonableness of his actions, when viewed in a light most favorably to the defense, must be considered based on his belief that he was facing "an active and aggressive shooter or shooters." A "defendant who reasonably believes he is in imminent danger and needs to act in self-defense, 'but recklessly or negligently used more force than was necessary to repel the attack,' is entitled to an instruction on manslaughter." State v. Schaffer, 135 Wn.2d 355, 358, 957 P.2d 214 (1998) (quoting State v. Jones, 95 Wn.2d at 623, 628 P.2d 472 (1981)); see also State v. Hughes, 106 Wn.2d 176, 190, 721 P.2d 902 (1986).

Although the majority of the testimony contradicts Sitthivong's claims that Philip Nguyen, Sok, Landon Nguyen, or Ahmach displayed a weapon before the shooting started,[7] there is at least some evidence that Sitthivong believed he was in imminent danger and acted in self-defense—at least enough to merit a justification instruction. In addition to Sitthivong's own testimony, Thomas testified that he recalled muzzle flashes by a shooter who had come out of the bar. In addition, several witnesses provided descriptions of the shooter that did not match Sitthivong.

In Henderson, our Supreme Court advised that courts should "err on the side of instructing juries on lesser included offenses." Henderson, 182 Wn.2d at 736. In light

---

[7] For example, Sitthivong friends all testified that they did not see either Landon or Ahmach holding a weapon, and none saw Sitthivong have a confrontation with Philip or Sok.

of Henderson, and viewing the evidence in the light most favorable to Sitthivong, a rational jury could find Sitthivong saw one or more weapons, and acting in self-defense, acted recklessly and disregarded a substantial risk that a homicide may occur, but that he did not with extreme indifference creating a grave risk of death. Henderson, 182 Wn.2d at 744. Sitthivong was entitled to receive an instruction for the lesser included defense of first degree manslaughter for count 5.

*Sitthivong Cannot Demonstrate Prejudice*

Unlike in Henderson, this case arises out of a PRP. While our Supreme Court has opined "the erroneous failure to instruct the jury on a lesser included offense" is per se prejudice on direct appeal, it has never held it to be per se prejudicial on collateral review. State v. Condon, 182 Wn.2d 307, 326, 343 P.3d 357 (2015); In re Pers. Restraint of Coggin, 182 Wn.2d 115, 120, 340 P.3d 810 (2014) ("Even in those cases where the error would never be harmless on direct review, we have not adopted a categorical rule that would equate per se prejudice on collateral review with per se prejudice on direct review."); In re Pers. Restraint of St. Pierre, 118 Wn.2d 321, 328-29, 823 P.2d 492 (1992). Consequently, Sitthivong must meet a heightened showing required on collateral review before this court will grant relief.

A petitioner bringing a PRP has the burden to demonstrate by a preponderance of the evidence "actual prejudice" for constitutional errors, and "to show a fundamental defect resulting in a complete miscarriage of justice for nonconstitutional errors." State v. Chambers, 176 Wn.2d 573, 584, 293 P.3d 1185 (2013); In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 867, 50 P.3d 618 (2002). The failure to instruct on a lesser included offense is not an error of constitutional magnitude. State v. Lord, 117 Wn.2d

-13-

829, 880, 822 P.2d 177 (1991); State v. O'Hara, 167 Wn.2d 91, 101, 217 P.3d 756 (2009).[8] Consequently, Sitthivong must demonstrate, by a preponderance of the evidence, that the exclusion of the manslaughter instruction under count 5 resulted in a complete miscarriage of justice.

The complete miscarriage of justice standard includes, for example, substantial errors in sentencing calculations, such as, a sentence that is based upon an incorrect offender score, incarceration for an offense which was not criminal at the time it was committed, and incarceration for charges brought beyond the time allowed by the statute of limitation. See Goodwin, 146 Wn.2d at 868; In re Pers. Restraint of Woods, 154 Wn.2d 400, 409, 114 P.3d 607 (2005); In re Pers. Restraint of Thompson, 141 Wn.2d 712, 719, 10 P.3d 380 (2000); In re Pers. Restraint of Stoudmire, 141 Wn.2d 342, 354, 5 P.3d 1240 (2000). In each case, a fundamental miscarriage of justice was found because the court acted without statutory authority. Goodwin, 146 Wn.2d at 868; Stoudmire, 141 Wn.2d at 355; Thompson, 141 Wn.2d at 723.

Sitthivong has not demonstrated how the failure to provide the lesser included instruction for manslaughter in the first degree resulted in a complete miscarriage of justice. Sitthivong simply relies on the broad argument that he was inherently prejudiced by the lack of a lesser included offense instruction. We disagree.

This court has previously held that "[a]n error in failing to instruct on a lesser included offense does not require reversal if the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly

---

[8] See also State v. Scott, 110 Wn.2d 682, 688, n.5, 757 P.2d 492 (1988).

given instructions." State v. Hansen, 46 Wn. App. 292, 297, 730 P.2d 706 (1986).[9]

Here, counts 1 and 5 were both for the killing of Steve Sok. Count 1, first degree premeditated murder, included the lesser offense instructions for second degree murder and first degree manslaughter, with an additional justification instruction. The jury was instructed that "if, after full and careful deliberation on this charge, you are not satisfied beyond a reasonable doubt that the defendant is guilty, then you will consider whether the defendant is guilty of the lesser crime of Manslaughter in the First Degree." The jury found Sitthivong guilty of second degree murder—defined as acting "with intent to cause the death of another person but without premeditation." The jury's verdict necessarily rejected both the manslaughter instruction and the justification instruction. We presume juries follow the instructions provided. State v. Ervin, 158 Wn.2d 746, 756, 147 P.3d 567 (2006).

The policy reasons for requiring lesser included instructions are also absent here. As the Henderson court explained, lesser included instructions help "protect the integrity of our criminal justice system by ensuring that juries considering defendants who are 'plainly guilty of some offense' do not set aside reasonable doubts in order to convict them and avoid letting them go free." Henderson, 182 Wn.2d at 742 (quoting Keeble v. U.S., 412 U.S. 205, 212-13, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973)). In this case, although count 5 only gave one instruction, the jury had already considered the separate charge in count 1 for the killing of Sok, which included instructions for first degree murder, second degree murder, first degree manslaughter, and justification.

---

[9] Holding it was harmless error to fail to instruct on a lesser included offense of unlawful imprisonment when jury rejected the intermediate offense of second degree kidnapping and convicted defendant of first degree kidnapping. Hansen, 46 Wn. App. at 297. See also State v. Guilliot, 106 Wn. App. 355, 369, 22 P.3d 1266 (2001).

Because the jury had already found Sitthivong guilty for the killing of Sok, (as well as four other charges), there was no risk that a finding of not guilty on the final count would result in acquittal.

We hold Sitthivong has failed to demonstrate by a preponderance of the evidence that that the error was a fundamental defect which inherently resulted in a complete miscarriage of justice.

*Ineffective Assistance of Counsel*

Sitthivong next argues he received ineffective assistance of counsel when his counsel failed to obtain the manslaughter instruction.[10] To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure on either prong defeats the claim. Strickland, 466 U.S. at 697.

The reasonableness inquiry presumes effective representation. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). "Competency of counsel is determined based upon the entire record below." McFarland, 127 Wn.2d at 335. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

---

[10] The State argues that this claim was untimely. We disagree. An instructional error claim viewed "through the lens of ineffective assistance does not transform it into a different claim; the claim remains one of instructional error." In re Pers. Restraint of Wilson, 169 Wn. App. 379, 388, 279 P.3d 990 (2012).

Strickland, 466 U.S. at 689; see also State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011).

Sitthivong has failed to demonstrate his defense counsel's performance fell below an objective standard of reasonableness. Defense counsel specifically requested the instruction for the lesser included offense of manslaughter and provided meaningful argument in support of its use. When that request was rejected, defense counsel submitted supplemental briefing providing more support for the request. Then, on appeal, Sitthivong's appellate counsel again raised the claim that the trial court erred in refusing to instruct on manslaughter.

Sitthivong cites to In re Pers. Restraint of Morris, 176 Wn.2d 157, 167, 288 P.3d 1140 (2012), where our Supreme Court held the defendant's attorney should have known about a case that had "without qualification" stated the necessary rule, as counsel "had but to look at this court's public trial jurisprudence" to find the rule. Morris, 176 Wn.2d at 167. Sitthivong argues that, in this case, the correct standard for manslaughter was stated in Gamble, and that his counsel should have known to argue that the decision in Gamble "abrogated" Pettus and Pastrana. Essentially, Sitthivong argues that we should hold his counsel's performance was not objectively reasonable because his counsel failed to make the same connection the Supreme Court made in Henderson, even before Henderson was decided. Henderson, 182 Wn.2d at 741. This court evaluates counsel's conduct from counsel's perspective at the time, and, contrary to Sitthivong's argument, neither Pettus nor Pestrana were specifically overturned or "abrogated" by Gamble. Gamble, 154 Wn.2d at 467. Unlike in Morris, there was no

obvious case stating this rule at the time of Sitthivong's trial. We hold defense counsel's performance did not fall below an objective standard of reasonableness.

We deny Sitthivong's petition.

Mann, J.

WE CONCUR:

Leach, J.

Appelwick, J.